SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

PATRICIA J. KENNEY (CSBN 130238)
Assistant United States Attorney

450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: 415.436.6857
Facsimile: 415.436.6748
Email: patricia.kenney@usdoj.gov

Attorneys for United States of America

ORIGINAL
FILED
AUG 2 7 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MMC

UNITED STATES OF AMERICA,

Plaintiff,

v.

REAL PROPERTY AND IMPROVEMENTS LOCATED AT 636 SAN PABLO AVENUE, ALBANY, CALIFORNIA,

and

REAL PROPERTY AND IMPROVEMENTS LOCATED AT 3959 COWAN ROAD, LAFAYETTE, CALIFORNIA

Defendants.

No. 07-
C 07 4432

**COMPLAINT FOR FORFEITURE**

**NATURE OF THIS ACTION**

1. This is a judicial forfeiture action, as authorized by 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 985, involving real property and improvements the purchase of which is traceable to the proceeds of an exchange of money for a controlled substance in violation of Subchapter I, Chapter 13 of Title 21 United States Code.

## JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355, and 21 U.S.C. § 881(6).

## PARTIES

3. Plaintiff is the United States of America.

4. The first defendant is real property and improvements located at 636 San Pablo Avenue, Albany, California, identified by Alameda County APN 066-2796-013, and further described in Attachment A ("defendant 636 San Pablo Avenue"). The second defendant is real property and improvements located at 3959 Cowan Road, Lafayette, California, identified by Contra Costa County APN 246-152-037, and further described in Attachment B ("defendant 3959 Cowan Road"). Winslow Norton and Abraham Norton are the owners of record of defendant real properties as joint tenants.

## VENUE

5. Venue lies in the Northern District of California pursuant to 28 U.S.C. §§ 1355(b) and 1395, because the acts giving rise to this *in rem* action occurred in the Northern District and because the defendants are located in the Northern District.

## INTRADISTRICT ASSIGNMENT

6. This matter arises in the county of Alameda because a substantial part of the events which give rise to plaintiff's claims occurred in that county.

## FACTS

### A. For a Number of years, Winslow Norton and Abraham Norton Have Been in the Business of Selling Marijuana

7. On February 3, 2004, Winslow Norton ("WINSLOW") was arrested by the University of California Police in Berkeley, California, for being in possession of approximately one pound of packaged marijuana for sale.

8. On April 12, 2005, WINSLOW was arrested by the Mendocino County Sheriff's Office in Willits, California for being in possession of approximately 44 pounds of marijuana.

///

WINSLOW told the arresting officers that he ran a "medical" dispensary in the Bay Area and that the marijuana was for "my patients at the club."

9. Compassionate Collective of Alameda County issued American Express credit cards to WINSLOW and Abraham Norton ("ABRAHAM"). Credit card statements for WINSLOW and ABRAHAM were reviewed for the period September 2004 through January 2007. Between October 2004 and May 2005, a total of 46 charges were made on that American Express card by the Best Western Hotels in Willits and Garberville, California. These lodging expenses were for generally for one to two nights, but one was for three nights. The records indicate that WINSLOW stayed at the Best Western Humboldt in Garberville, California, arriving April 8, departing April 11, 2005. On April 12, 2005, WINSLOW was arrested for transporting 44 pounds of marijuana in Mendocino County.

10. From at least as early as June 2004 through August 2007, WINSLOW and ABRAHAM were engaged in the distribution of marijuana at the Compassionate Collective of Alameda and the Compassionate Patients' Cooperative of California ("CPCC") in Hayward, California.

11. In June 2004, WINSLOW opened a Bank of America checking account ending with # 06978, in the name of Compassionate Collective of Alameda at 21222 Mission Boulevard in Hayward, California. On information and belief, in November 2004, WINSLOW and ABRAHAM caused a limited liability corporation to be formed named Compassionate Collective of Alameda County, LLC ("CCAC"). WINSLOW and ABRAHAM are believed to be managers and members.

12. In June 2006, WINSLOW caused the Compassionate Patients' Cooperative of California, Inc. ("CPCC"), located at 21222 Mission Boulevard in Hayward, California, to be incorporated. WINSLOW, ABRAHAM and Brian Everett are listed as Directors.

13. The State of California Board of Equalization ("BOE") has the authority to assess tax on sales of marijuana or other unlawful substances when it becomes aware of such sales. BOE requires sellers of "medical marijuana" to obtain a seller's permit, file sales tax returns and pay sales tax liabilities.

14. On December 26, 2006, an "Application for Seller's Permit" was certified for CPCC by WINSLOW, ABRAHAM and Brian Everett as directors. The reported date to begin business activities was July 7, 2006. The reported items to be sold were "medicine / medical marijuana." The reported business address was 21222 Mission Boulevard, Hayward, California 94541. Gurdip Sandhu was listed as the business landlord. The projected monthly gross sales and projected monthly taxable sales was $3,000,000.

15. On December 29, 2006, BOE issued seller's permit number 100-850305 to CPCC. On December 28, 2006, WINSLOW filed a sales tax return for the period July 7, 2006 through September 30, 2006 and reported gross sales of $8,350,027, sales tax liability of $730,627, a 10% penalty of $73,063 and interest of $12,128. The sales tax liability, penalty and interest, which total $815,818, were paid on CCAC Bank of America account ending with # 42261, by check number 545 dated December 27, 2006 for $50,000, by check number 546 dated December 27, 2006 for $730,589.56 and by check number 549 dated December 27, 2006 for $35,228.44.

16. For the period October 1, 2006 through December 30, 2006, CPCC reported gross sales of $10,958,112 and a sales tax liability of $958,835. The sales tax liability of $958,835 was paid from CCAC Bank of America account ending with # 42261, by check number 547 dated December 27, 2006 for $262,987.98, by check number 548 dated December 27, 2006 for $321,391.37 and by check number 595 dated January 31, 2007 for $374,455.65.

17. On February 16, 2007, ABRAHAM filed a sales and use tax prepayment form for the month of January 2007 and submitted a prepayment of $362,624. An "X-Out Report" for the period January 1, 2007, to January 31, 2007, was attached to the prepayment form. This report indicates net sales of $4,144,353.49 for the month of January 2007. The prepayment was paid from CCAC Bank of America ending with # 42261, by check number 616 dated February 15, 2007 for $362,624.

18. On March 13, 2007, the Alameda County Sheriff's Office ("ACSO") conducted a building compliance inspection at the CCAC/CPCC, located at 21222, 21228 and 21272 Mission Boulevard in Hayward, California. The ACSO identified WINSLOW and ABRAHAM as the

proprietors of CCAC/CPCC. Robin Norton, mother of WINSLOW and ABRAHAM, was identified as a clerk. The interior and exterior of the buildings were photographed. The photographs included "Cash Only" signs posted inside CCAC.

19. Surveillance conducted on November 7, 2006, November 20, 2006, January 30, 2007, January 31, 2007, February 1, 2007, April 18, 2007, April 25, 2007 and August 15, 2007 at the CCAC/CPCC Hayward premises has confirmed a large volume of persons arriving at the CCAC/CPCC and then leaving from the CCAC/CPCC after a brief period of time. Users/purchasers have been commonly observed exiting from the CCAC/CPCC with a plain brown paper bag held clearly visible in his or her hands.

20. On one occasion in April of 2007, an undercover agent ("UCA") went to CCAC/CPCC, obtained a CPCC identification card and purchased a ½ ounce of the marijuana strain called "Jolly Rancher" for $180 cash. A sales receipt was not issued. The marijuana was sold in a silver Ziploc type package with a label attached that had the CCAC business name and address along with a bar code and the name "Jolly Rancher" on it.

**B. Purchase of Defendant 636 San Pablo Avenue**

21. On or about April 8, 2007, WINSLOW and ABRAHAM purchased commercial property at 636 San Pablo Avenue in Albany, California. The purchase price for the building was $1,100,000. The escrow was processed by Cornerstone Title Company. A $254,428.19 ' down payment was made, consisting of a $10,000 personal check from WINSLOW, a $122,428.19 Bank of America cashier's check purchased by WINSLOW and a $122,000 Bank of America cashier's check purchased by ABRAHAM. WINSLOW and ABRAHAM financed the balance of $880,000 with InterBay Funding, LLC.

22. WINSLOW's personal check number 244, dated April 8, 2007, paid to Cornerstone Title, for $10,000 was issued from Bank of America checking account ending with # 04619.

23. Bank of America cashier's check number 416998571 was dated June 6, 2007 for $122,428.19 and was paid to the order of "Cornerstone Title Company, Loan #2140929." The cashier's check was issued from the Danville banking center. WINSLOW is named as the

remitter on the cashier's check.

24. The source of funds for Bank of America cashier's check number 416998571 was a $122,428.19 withdrawal from WINSLOW's Bank of America personal savings account ending with # 01306 on June 6, 2007.

25. Bank of America cashier's check number 416998572 was dated June 6, 2007 for $122,000 and was paid to the order of "Cornerstone Title Company, Loan #2140929." The cashier's check was issued from the Danville banking center. ABRAHAM is named as the remitter on the cashier's check.

26. The source of funds for Bank of America cashier's check number 416998572 was a $122,000 withdrawal from ABRAHAM's Bank of America personal checking account ending with # 03844 on June 6, 2007.

27. On the mortgage loan application submitted to InterBay Funding LLC, WINSLOW and ABRAHAM both stated that they were employed at CCAC for the past four years (since 2003) and had worked in this line of work/profession for the past four years. WINSLOW listed his position/title as vice president. ABRAHAM listed his position/title as owner. Both WINSLOW and ABRAHAM stated that their current base employment income was $15,358 per month ($184,296 annually). Escrow closed on June 8, 2007. The first payment was due on August 1, 2007 for $9,551.29, which consists of $8,405.46 for the mortgage and $1,145.83 for property taxes.

**C. Purchase of Defendant 3959 Cowan Road**

28. On or about April 23, 2007, WINSLOW and ABRAHAM purchased residential property at 3959 Cowan Road in Lafayette, California. The purchase price for the residence was $1,070,000. The escrow was processed by Ticor Title Company. A $119,000 down payment was made, consisting of a $10,000 personal check from ABRAHAM, a $45,000 Bank of America cashier's check purchased by ABRAHAM and a $64,000 Bank of America cashier's check purchased by WINSLOW. ABRAHAM and WINSLOW financed the balance of $963,000 with a mortgage loan of $856,000 and home equity line of credit of $107,000 with Countrywide Home Loans.

29. ABRAHAM's personal check number 1130, dated May 25, 2007, paid to Ticor Title, for $10,000 was issued from Bank of America checking account ending with # 03844.

30. Bank of America cashier's check number 416249547 was dated June 11, 2007 for $45,000 and was paid to the order of "Tycor Title." The cashier's check was issued from the Shattuck-Vine banking center. ABRAHAM is named as the remitter on the cashier's check.

31. The source of funds for Bank of America cashier's check number 416249547 was a $45,000 withdrawal from ABRAHAM's Bank of America personal checking account ending with # 03844 on June 11, 2007.

32. Bank of America cashier's check number 416249546 was dated June 11, 2007 for $64,000 and was paid to the order of "Tycor Title." The cashier's check was issued from the Shattuck-Vine banking center. WINSLOW is named as the remitter on the cashier's check.

33. The source of funds for Bank of America cashier's check number 416249546 was a $61,000 withdrawal from WINSLOW's Bank of America personal checking account ending with # 04619 and a $3,000 withdrawal from WINSLOW's Bank of America personal savings account ending with # 01306 on June 11, 2007.

34. On the mortgage loan applications submitted to Countrywide Home Loans dated May 7, 2007, both WINSLOW and ABRAHAM stated that they were employed at CCAC for the past two years and six months and had worked in the same line of work/profession for the past four years. They both stated that their position/title at CCAC is vice president and that the type of business is a medical supplier. Both WINSLOW and ABRAHAM stated that their current base employment income was $15,358.54 per month ($184,302.48 annually). Escrow closed on or about June 7, 2007. The first mortgage payment and equity line payment were due on July 1, 2007 for $4,815, but were paid late. ABRAHAM made a late mortgage payment to Countrywide with personal check number 1176 from his Bank of America checking ending with # 03844, dated July 28, 2007. ABRAHAM also made a late payment to Countrywide for the equity line with personal check number 1175 from his Bank of America checking account ending with # 03844, dated July 28, 2007 for $459.51.

///

**D. The Only Earned Income of WINSLOW AND ABRAHAM Was from CCAC**

35. A review of tax return and return information for WINSLOW and ABRAHAM For the tax years 2004 through 2006 reveals that CCAC is their source of earned income.

36. WINSLOW filed U.S. Individual Income Tax Returns for tax years 1999, 2004 and 2005. WINSLOW filed an extension for tax year 2006, which is due on October 15, 2007.

37. WINSLOW filed a 2004 U.S. Individual Income Tax Return and reported total income of $7,300 and taxable income of ($650). As a result, WINSLOW had no tax liability and received a federal tax refund of $1,401 (income taxes withheld) for the 2004 tax year. The reported income was from CCAC wages.

38. WINSLOW filed a 2005 U.S. Individual Income Tax Return and reported total income of $201,145 and taxable income of $162,881. As a result, WINSLOW had a tax liability of $40,750. Because his federal income tax withheld was $33,147, WINSLOW had a federal tax due of $7,603 for the 2005 tax year. The reported income was $143,000 from CCAC wages and $58,145 from CCAC Form 1120S K-1 distribution (Shareholder's Share of Income, Deductions, Credits, etc).

39. ABRAHAM filed U.S. Individual Income Tax Returns for tax years 2004 and 2005. ABRAHAM filed an extension for tax year 2006, which is due on October 15, 2007.

40. ABRAHAM filed a 2004 U.S. Individual Income Tax Return and reported total income of $7,300 and taxable income of ($650). As a result, ABRAHAM had no tax liability and received a federal tax refund of $1,401 (income taxes withheld) for the 2004 tax year. The reported income was from CCAC wages.

41. ABRAHAM filed a 2005 U.S. Individual Income Tax Return and reported total income of $201,146 and taxable income of $162,882. As a result, ABRAHAM had a tax liability of $40,750. Because his federal income tax withheld was $33,147, ABRAHAM had a federal tax due of $7,603 for the 2005 tax year. The reported income was $143,000 from CCAC wages and $58,146 from CCAC Form 1120S Schedule K-1 (Shareholder's Share of Income, Deductions, Credits, etc).

42. CCAC filed federal income tax returns with the IRS, under the name of "Compassionate Collective of Alameda LLC." The business address provided was 21222 Mission Boulevard, Hayward, California. CCAC filed a U.S. Corporation Income Tax Return (Form 1120) for tax year 2004 and reported gross sales $77,470, total income of $57,359 and taxable income of $12,376. As a result, CCAC had a tax liability of $1,856. Because no federal estimated income tax payments were made, CCAC also had an estimated tax penalty of $56. CCAC's total amount owed for tax year 2004 was $1,912.

43. CCAC filed an extension with the IRS for tax year 2005, which was due on September 15, 2006. To date, a 2005 Form 1120 or Form 1120S has not been filed. However for tax year 2005, CCAC issued Forms 1120S Schedule K-1 (Shareholder's Share of Income, Deductions, Credits, etc) to WINSLOW and ABRAHAM reporting shareholder income of $58,145 and $58,146, respectively.

44. CCAC filed Forms W-2 (Wage and Tax Statements) for tax year 2006, reporting wages of $157,300 paid to both WINSLOW and ABRAHAM.

45. CPCC filed a federal corporate income tax extension for tax year 2006 with the IRS, under the name of "Compassionate Patients Cooperative of California." The business address provided was 2122 Mission Boulevard, Hayward, California. The due date for the corporate income tax return is September 15, 2007. On March 19, 2007, the IRS received a $201,047 tax payment from CPCC for tax year 2006. The source of this $201,047 tax payment was check number 657, dated March 14, 2007 from CCAC's Bank of America checking account ending with # 42261.

46. Analysis of WINSLOW's Bank of America accounts (savings account ending with # 01306 and checking account ending with # 04619) and ABRAHAM's Bank of America accounts (savings account ending with # 03533 and checking account ending with # 03844) indicate that main source of deposits to be from CCAC checks and direct deposit payroll:

WINSLOW's savings account ending with # 01306 had a balance of $313.80 in June of 2004 and reflects the following subsequent activity:

- Total 2004 deposits $1.28 (none from CCAC)

- Total 2005 deposits $24,872.32 ($21,822.36 from CCAC)
- Total 2006 deposits $21,914.43 ($18,243.57 from CCAC)
- 2007 deposits to July 26, 2007, $84,714.51 (deposits verified through June 29, 2007, $80,293.19 of which $80,000 was transferred from his checking account ending with # 04619)

WINSLOW's checking account ending with # 04619 had a balance of $93.83 in June of 2004 and reflects the following subsequent activity:

- Total 2004 deposits $31,880.03 ($4,129.97 from CCAC)
- Total 2005 deposits $66,935.18 ($64,876.43 from CCAC)
- Total 2006 deposits $82,161.87 ($82,154.44 from CCAC)
- 2007 deposits to July 26, 2007 $94,009.79 ($90,073.80 from CCAC)

ABRAHAM's savings account ending with # 03533 had a balance of $267.49 in June of 2004 and reflects the following subsequent activity:

- Total 2004 deposits $4,720.11 ($4,119.31 from CCAC)
- Total 2005 deposits $1.43 (bank interest)
- Total 2006 deposits $1.50 (bank interest)
- Total 2007 deposits to June 29, 2007, $50.35 (none from CCAC)

ABRAHAM's checking account ending with # 03844 had a balance of $86.56 in June of 2004 and reflects the following subsequent activity:

- 2004 no deposits
- Total 2005 deposits $110,922.74 ($86,937.79 from CCAC)
- Total 2006 deposits $95,798.18 ($95,788.14 from CCAC)
- 2007 deposits to June 26, 2007 $90,218.85 ($88,114.26 from CCAC)

47. CCAC maintains two checking accounts at Bank of America. On June 9, 2004, checking account ending with # 06978 was opened. On March 23, 2006, checking account ending with # 42261 was opened. CCAC processes its payroll for all employees, including the salaries of WINSLOW and ABRAHAM through ADP payroll services. Funds were transferred from the CCAC checking accounts to ADP for payment of the payroll. From to December 2004

to July 2006, payroll was paid from checking account ending with # 06978. From April 2006 to present, payroll was paid though checking account ending with # 42261.

48. CCAC's Bank of America checking account ending with # 06978 was opened on June 9, 2004 with $100. Thereafter the deposits into # 42261 consisted mainly of cash:

- Total 2004 deposits $80,070 (of which at least $34,070 was cash – the remainder of the deposit slips were unavailable)
- Total 2005 deposits $1,323,006.68 ($1,319,105 is cash)
- Total 2006 deposits $1,330,534.15 ($1,153,610 is cash and $170,000 transfer from CCAC checking account number ending with # 42261.)
- 2007 deposits to July 18, 2007 $499,828.94 (all transferred from CCAC checking account ending with # 42261)

49. CCAC's Bank of America checking account ending with # 42261 was opened on March 23, 2006 with $213,639.81 which reflected a transfer from Compassionate Collective of Alameda account ending with # 06978. Thereafter the deposits into account ending with # 42261 consisted mainly of cash:

- Total 2006 deposits $4,641,453.78 ($4,420,184 is cash and $213,639.81 transfer from CCAC checking account ending with # 06978.)
- 2007 deposits through July 18, 2007 $5,880,778.26 (deposits verified through April 17, 2007 was $4,016,454.75, of which $4,014,811 is cash)

50. Based on the foregoing, the source of WINSLOW and ABRAHAM's earned income is CCAC which is in the business of selling and distributing a controlled substance, namely marijuana. Further, WINSLOW and ABRAHAM used their income from CCAC to purchase defendant 636 San Pablo Avenue and defendant 3959 Cowan Road in Lafayette.

**FIRST CLAIM – FORFEITURE PURSUANT TO 21 U.S.C. § 881(a)(6)**
**(forfeiture of drug proceeds and property traceable to drug proceeds)**

51. The United States incorporates by reference the allegations of paragraphs one through 50 as though fully set forth.

///

52. Title 21, United States Code, Section 881(a)(6) provides, in part, for the forfeiture of all moneys furnished or intended to furnished to a person in exchange for a controlled substance and all proceeds traceable to such an exchange in violation of Subchapter I, Chapter 13 of Title 21, United States Code.

53. Considering the totality of the circumstances, defendant 636 San Pablo Avenue and defendant 3959 Cowan Road are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

**SECOND CLAIM – FORFEITURE PURSUANT TO 18 U.S.C. § 981(a)(1)(A)**
**(forfeiture of property involved in violation of 18 U.S.C. § 1957 - money laundering)**

54. Plaintiff incorporates by reference the allegations of paragraphs one through 53 as though fully set forth.

55. Title 18, United States Code, Section 981(a)(1)(A) provides, in part, for the forfeiture of any property, real or personal, involved in or traceable to a transaction or attempted transaction, in violation of Title 18, United States Code, Section 1957.

56. Title 18, United States Code, Section 1957 prohibits a person from knowingly engaging, or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from a specified unlawful activity.

57. Title 21, United States Code, Section, 841(a)(1) makes it unlawful for a person knowingly to distribute or dispense, or possess with intent to distribute or dispense a controlled substance, including marijuana. Section 841(a) is a specified unlawful activity under Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1).

58. Title 21, United States Code, Section, 846 prohibits a person from attempting or conspiring to distribute and possess with the intent to distribute a controlled substance. Section 846 is a specified unlawful activity under Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1).

59. Considering the totality of the circumstances, defendant 636 San Pablo Avenue and defendant 3959 Cowan Road are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

///

///

**RELIEF SOUGHT**

60. The United States has not seized the defendant 636 San Pablo Avenue and defendant 3959 Cowan Road, but may later apply to the Court if necessary for authority to seize it or authorize an interlocutory sale to preserve its value. After the filing of this action, the United States will as required by 18 U.S.C. § 985(b)(1) and (c)(1):

a. Post notice of this action and a copy of this Complaint for Forfeiture at the defendant real properties; and

b. Serve notice of this action together with a copy of the Complaint for Forfeiture and related documents, on the owners of record fo the defendant real properties.

In addition, the United States will record a *lis pendens* in the county records for the County of Alameda to demonstrate the status of the defendant 636 San Pablo Avenue and defendant 3959 Cowan Road in this *in rem* action.

61. United States of America requests that due process be issued to enforce the forfeiture of defendant 636 San Pablo Avenue and defendant 3959 Cowan Road; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment of forfeiture on behalf of the United States be entered; and that the United States be awarded costs and such other relief as may be proper and just.

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

STEPHANIE HINDS
Assistant United States Attorney

Dated: August 27, 2007

Assigned to:

P. KENNEY
Assistant United States Attorney

VERIFICATION

I, PAMELA WOO, state as follows:

1. I am a Special Agent for the Internal Revenue Service – Criminal Investigation. I am familiar with the facts in the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint for Forfeiture and believe the facts set forth in the Complaint to be true based upon my personal knowledge and knowledge that has come to me in the ordinary course of business, such as from a review of relevant investigative reports, a review of documentary evidence, discussions with others involved in the investigation and participation in the investigation.

* * * * *

I declare under penalty of perjury that the foregoing is true. Executed this 27 day of August 2007 in San Francisco, California.

Pamela Woo

PAMELA WOO
Special Agent
Internal Revenue Service - Criminal Investigation

# ATTACHMENT A

**(Legal Description of Defendant 636 San Pablo Avenue, Albany, California)**

Real property in the City of ALBANY, County of Alameda, State of CALIFORNIA, described as follows:

LOTS 42 AND 43, BLOCK 2, MAP NO. 7 OF REGENTS PARK, FILED MARCH 18, 1907, MAP BOOK 22, PAGE 52, ALAMEDA COUNTY RECORDS.

APN: 066-2796-013

# ATTACHMENT B

**(Legal Description of 3959 Cowan Road, Lafayette, California)**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LAFAYETTE, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL ONE:

PORTION OF THE RANCHO ACALANES, DESCRIBED AS FOLLOWS:

BEGINNING ON THE SOUTHERN LINE OF THE PARCEL OF LAND DESCRIBED IN THE QUITCLAIM DEED FROM FLOYD COWAN, ET UX, TO HAROLD L. MORRIS, ET UX, RECORDED APRIL 25, 1949 IN BOOK 1366 OF OFFICIAL RECORDS, PAGE 328, AT THE EASTERN LINE OF THE PARCEL OF LAND DESCRIBED IN THE DEED FROM MANUEL S. VARGEN, ET AL, TO JOHN SILVA SANTOS, ET UX, RECORDED MAY I9, I928 IN BOOK 126 OF OFFICIAL RECORDS, PAGE 371; THENCE ALONG SAID EASTERN LINE SOUTH 0° 01' WEST, 122.10 FEET TO THE NORTH LINE OF THE PARCEL OF LAND DESCRIBED IN THE DEED FROM JOHN SILVA SANTOS, ET UX, TO NORMAN MCCAULEY, ET UX, RECORDED OCTOBER 6, 1945 IN BOOK 827 OF OFFICIAL RECORDS, PAGE 303; THENCE ALONG SAID NORTHERN LINE SOUTH 86°41' WEST, 104.42 FEET TO THE SOUTHEASTERN CORNER OF THE PARCEL OF LAND DESCRIBED IN THE DEED FROM HARVEY B. LYON, JR. TO RALPH KENNETH SNYDER, ET UX, RECORDED JANUARY 23, 1952 IN BOOK 1881 OF OFFICIAL RECORDS, PAGE 321; THENCE ALONG THE EXTERIOR BOUNDARY LINES OF SAID SNYDER PARCEL THE FOLLOWING COURSES AND DISTANCES: NORTH 20° 07'20" WEST, 58 FEET AND NORTHWESTERLY TO THE NORTHERN CORDER THEREOF, BEING A POINT WHICH IS NORTH 20°07'20" WEST, 85 FEET AND SOUTH 86° 41' WEST, 30 FEET FROM SAID SNYDER SOUTHEASTERN CORNER (1881 OR 321); THENCE NORTH 20°07'20" WEST, 74.18 FEET TO THE SOUTHERN LINE OF SAID MORRIS PARCEL (1366 OR 328); THENCE SOUTH 84° 05' EAST ALONG SAID SOUTHERN LINE, 190.00 FEET TO THE POINT OF BEGINNING.

EXCEPTING FORM PARCEL ONE:

THAT PORTION THEREOF CONVEYED TO JAMES H. HAMMILL, JR, ET UX, BY DEED RECORDED JANUARY 25, 1971 IN BOOK 6302 OF OFFICIAL RECORDS, PAGE 555.

PARCEL TWO:

A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS AND AS A RIGHT OF WAY FOR WATER, GAS, OIL AND SEWER PIPE LINES AND FOR TELEPHONE, ELECTRIC LIGHT AND POWER LINES, TOGETHER WITH THE NECESSARY POLES OR UNDERGROUND CONDUITS TO CARRY SAID LINES OVER, UNDER AND ACROSS A STRIP OF LAND 20 FEET IN WIDTH, THE ENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERN CORNER OF THE PARCEL OF LAND DESCRIBED IN THE QUITCLAIM DEED FROM FLOYD COWAN, ET UX, TO HAROLD L. MORRIS, ET UX, RECORDED APRIL 25, 1949 IN BOOK 1366 OF OFFICIAL RECORDS,

**[Attachment B continued]**

PAGE 328; THENCE ALONG THE SOUTHERN LINE OF SAID MORRIS PARCEL (1366 OR 328) SOUTH 84° 05' EAST, 426.07 FEET.

EXCEPTING FROM PARCEL TWO:

1. THAT PORTION THEREOF LYING WITHIN PARCEL ONE ABOVE.

2. THOSE PORTIONS THEREOF LYING WITHIN PARCELS THREE AND FOUR BELOW.

PARCEL THREE:

PORTION OF THE RANCHO ACALANES, DESCRIBED AS FOLLOWS:

BEGINNING ON THE SOUTHERN LINE OF THE PARCEL OF LAND DESCRIBED AS PARCEL ONE IN THE DEED FROM HAROLD L. MORRIS, ET UX, TO FLOYD COWAN, ET UX, RECORDED DECEMBER 20, 1950 IN BOOK 1689 OF OFFICIAL RECORDS, PAGE 177, AT THE EASTERN TERMINUS OF THE NORTHERN LINE OF THE PARCEL OF LAND DESCRIBED AS PARCEL TWO IN SAID DEED (1689 OR 177), BEING ALSO AT A SOUTHEASTERN CORNER OF THE PARCEL OF LAND DESCRIBED IN THE DEED FROM FLOYD COWAN, ET UX, TO JOHN R. NICHOLS, ET UX, RECORDED JUNE 2, 1952 IN BOOK 1941 OF OFFICIAL RECORDS, PAGE 16; THENCE NORTHEASTERLY ALONG THE SOUTHEASTERN LINE OF SAID NICHOLS PARCEL (1941 OR 16) TO A POINT ON THE EASTERN LINE OF SAID COWAN PARCEL ONE (1689 OR177), DISTANT THEREON NORTH 0° 26' WEST, 30 FEET FROM THE SOUTHEASTERN CORNER OF SAID COWAN PARCEL ONE (1689 OR 177); THENCE SOUTH 0° 26' EAST, 30 FEET TO SAID SOUTHEASTERN CORNER; THENCE 84° 05' WEST ALONG SAID COWAN SOUTHERN LINE (1689 OR 177) TO THE POINT OF BEGINNING.

PARCEL FOUR:

PORTION OF THE RANCHO ACALANES, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERN CORNER OF THE PARCEL OF LAND DESCRIBED IN THE DEED TO JAMES H. HAMMILL, JR., ET UX, RECORDED JUNE 15, 1967 IN BOOK 5390 OF OFFICIAL RECORDS, PAGE 353; THENCE FROM SAID POINT OF BEGINNING ALONG THE EAST LINE OF SAID HAMMILL PARCEL (5390 OR 353), SOUTH 20° 07' 20" EAST, 40.09 FEET; THENCE NORTH 42° 29' 55" WEST, 54.27 FEET TO THE NORTHERN LINE OF SAID HAMMILL PARCEL (5390 OR 353); THENCE ALONG THE LAST NAMED LINE SOUTH, 84° 05' 00" EAST, 23 FEET TO THE POINT OF BEGINNING.